This is a case about a discriminatory denial of a promotion based on race where the party passed over for the promotion was clearly better qualified than the party who was awarded the promotion. Compared to what I've heard this morning, it seems pretty straight forward. It's a summary judgment case. You know, the words clearly are never straight forward. When lawyers say clearly about anything, it sort of raises the antenna. So I'm not sure that's ever been, even if it's a statute or a case, when you say clearly, it makes somebody stand up and pay attention. You said clearly better qualified, more qualified. So specifically, what do you mean? The degrees, the experience, what is it you're saying below that made your client's case so overwhelmingly better? We can go through the areas in which she was better qualified. Well, tick them off for me. I will. My client, Ms. Roberson-King, had been a master counselor, which was the same qualification as her counterpart. Both she and the other had master's degrees, but Ms. Roberson-King, my client, had an additional 15 hours of graduate credit in assistive technology related to the provision of AT, assistive technology devices and services, provided to Louisiana Rehabilitation Services consumers, such as hearing aids, wheelchairs, home and vehicle modifications, and the like. My client had worked for the state of Louisiana since 1989 and since 2001 with Louisiana Rehabilitation Services. The woman who was promoted had worked for the state and LRS since only 2008. Regarding supervisory experience, my client had supervisory experience having been a first sergeant of the 917th Medical Squadron and retired from the U.S. Air Force Reserves after more than 20 years and having supervised approximately 10 enlisted personnel assigned to the 917th Medical Squadron. The person who was promoted, her supervisory experience was limited to supervising one rehabilitation counselor associate for about two years. My client had been selected to and attended the Leadership Academy, which was a program in which individuals could take training or be prepared to move up in promotional opportunities within the agency. It is a training in leadership skills and abilities. The person who was promoted had not been selected to and had not attended the Leadership Academy. This was all known decision makers. Production quotas is another issue. It is agreed by the decision maker and by the person who was ultimately given the promotion that the closed rehab objective is the factor in statistics that is directly referred to on the employee's performance evaluation system and is the primary goal of LRS. In the year before the promotion, my client achieved 104% of her closed rehab objective. The person promoted achieved only 38%, less than half of her production quota. In the year before that, my client achieved 125% of her closed rehab objective, while the person promoted achieved only 92%. LRS actually went back to previous years to try to even out and see if they could make the numbers look better. They got a little bit better, but they never could catch up to my client's production quota. She was better on average for those years that they could compare. The fact is that the person who was promoted had not been there very long, so there weren't very many years to compare. My client, she could have compared years going back much farther. The difficulty for me is both. I mean, there were four applicants. These two in particular head-to-head actually look superbly qualified. Your client has some terrific credentials. But on the other hand, Ms. Porter especially had that certificate, which is emphasized and was fairly brought up in all the interviews. So it just seems to me the law says if we're going to infer animus, employment discrimination, from what are valid different credentials, just two talented people, you've got to be able to show that it was outside the realm, that your client is clearly more qualified. So it's just the courts defer greatly to business judgments that are based on what you acknowledge are both different and good credentials. Ms. Porter had good ones, and the rehab certificate in particular, if the other supervisors all had it, that to me is the difficulty. It's very hard to see an intent to discriminate when they're selecting as salient a credential your client didn't have and then she did. That would be true, Your Honor, if in fact it were a salient credential. The fact is that the objectives, the superior qualifications that I just went over are vast and overwhelming. This CRC that you're discussing now is a certified rehabilitation counselor certificate. What it does is it means that you've gone through some training to be certified as a rehabilitation counselor. It has nothing to do with supervising people, management skills. That's the leadership academy that my client went to that Ms. Patton, the other person, did not go to. So if you've got two people pretty well, evenly qualified, which I don't even think that's the case, but let's just assume for the sake of discussion that they were, and my client has a leadership academy and theirs has certified rehabilitation counselor, that doesn't give her any edge, but the people she's going to supervise are rehabilitation counselors. So you certainly would expect a supervisor to be particularly certified, continuing education, the interest and stamina to obtain it. That all would be quite relevant, and I think it's true that the other supervisors had that certificate. The other point you might address is when you say the leadership academy is so important, is it correct factually that your client didn't put that down on her application? It is, but it's immaterial. It's immaterial that she didn't put it down? Correct. And yet you're now telling us that that's the salient thing, but it wasn't salient? Correct, and I'll tell you why. Okay. It's because the Chuck Vaughn who made the decision knew that she had gone to the leadership academy, had been chosen and had attended the leadership academy. He also knew that was selected and promoted had not been chosen and had not attended the leadership academy. So whether my client put it down on her application or not, kind of immaterial because Chuck Vaughn had the knowledge. It was well known my client had been selected. It's a big deal to go to the leadership academy. But if it's such a big deal, why wouldn't one put it down? It's well known.  Why would you not want to put it down? I don't even know how to answer that. Well, I don't understand the argument that it's significantly important. Everybody knows it, yet it's an application and one doesn't put it down. Those two don't work. I mean, I've read these cases and the outcomes of them, and I know that the court can come out whatever way they want, but I believe that it's very clear that the decision makers over there were well aware, and the record bears this out unmistakably, that she had gone to the leadership academy, the other had not, and that the decision makers were aware of it, both of those factors. Well, you're not responding to the question I asked, and that's just simple. The question was why did she not put it down on her application? I do not know, Your Honor. Okay. I mean, you're urging us to consider that it was a very, very significant point that makes her rise above the persons who got the job, yet you say, though it was important, she didn't put it down because other people were aware of it. I'm not asking you about what other cases say, just the practicality and the common sense nature that if one is applying for something, you put out all the good things that you have so that whether somebody knows about it or not, it's on the paper. And I simply was asking you a straightforward question, not about what cases say, but why wouldn't one put down the positives that one has to portray you better than other people who apply? That's all I ask. All right. I think she was, it was in the first place, I'll reiterate my answer that it was no secret about the Leadership Academy. Secondly, though, their Leadership Academy was not listed as a required element, nor as a desired or preferred element. And the same is true of the Certified Rehabilitation Counselor Certificate, not listed as a required or desired or preferred element. I don't know whether Ms. Patton listed that on her application or that was just something that Mr. Vaughan was aware of, similar to his awareness of my client's selection for an attendance at the Leadership Academy. The other really sort of astonishing thing here that separates us from a lot of these other cases is that Ms. Robertson King brought a grievance to the appointing authority complaining of this discrimination. And when he read her grievance, he wrote her a letter and said, after careful review of your grievance, a decision has been made to overturn the selection process. This means that the position will be announced again and all interested persons will have to reapply. The individuals selected for interview will be scored according to objective criteria with established benchmarks. And he promised a thorough investigation regarding my client's allegations of race discrimination. He testified in his deposition that he advised my client that he was rescinding Patton's to look more deeply into it to find out if, in fact, everything was done clean and above board. Even their appointing authority on reviewing the information, this means that a reasonable juror could have looked at this and said, you know, maybe there's some race discrimination in the process. Maybe she is better qualified, clearly better qualified. If the appointing authority himself says to her, I am going to rescind this whole process and we're going to start over and redo it, we're going to have an investigation. Later, though, Mr. Moore wrote to my client and said, in my letter to you dated December 5th of 2014, I informed you that I had made a decision to overturn the selection of Merrill Lott Patton and reannounce that position. At the time that I signed that letter, I was advised and understood that I had the authority to rescind the appointment of Ms. Lott. However, I've been advised and now realize that I do not have that authority. He testified in his deposition, I did make an attempt to pump the brakes, if you will, on this decision until such time that I could have some comfort level. People were going down to Shreveport and take a closer look at what's going on. As I stated earlier, I take these types of allegations seriously. So he testified that once he discovered that there may have been some unfairness in the process, he tried to rescind the promotion and was unable to do so. So this is not a situation where it just went across his desk and he rubber stamped it. It's not a situation where he reviewed closely and compared the applications of the different persons who were applying. He got a grievance and he looked at it and he said, whoa, let's rescind this. We're going to start over and do this all over again and we're going to have an investigation. Now to me that's evidence that a reasonable, and I don't have to prove pretext at this test, I just got to prove that a reasonable jury might find that she was clearly better qualified. And if the appointing authority is going to rescind the promotion and start an investigation, then I think that's pretty strong evidence. What's your best case that the facts relied on by the employer here are outside the realm? And from that, what would be the case you'd point us to? The best case that the... That even given, you know, the certificate on the one hand and the military on the other, that it's outside the realm to have chosen Ms. Pat. What case do you... What case law? You know, single cases, the most analogous factually. Thornbrough, I think. Thornbrough? Thornbrough is a good case. In a lot of these cases, a lot of these cases are age discrimination cases where you've got an older... Yeah, I'm just asking you for your best case. Thornbrough is your closest case. Thornbrough versus Columbus and Greenville. Also, Burrell versus Dr. Pepper. Okay, thank you. Ash versus Tyson Foods, a Supreme Court decision. Our position is just that if you actually closely review these and remove it from the, you know, the big bushel of cases where you're like, oh, you know, this is a tough threshold, you take a hard look at this case. If this is not the case where someone is clearly better qualified and meets that standard, you may as well just scrap that standard altogether because it's not going to apply to any case. This is the case. I understand that they're rare. It's tough to do. But this is the case where it happens, Your Honor. All right. You've saved your rebuttal time. All right, Ms. Brown. Good morning, Your Honors, and may it please the Court. I am Danielle Brown, and I represent the State of Louisiana Workforce Commission. We ask that this Court affirm the decisions of the District Court on two issues. The first one is that allegations of unlawful discrimination in violation of Title VII do not give rise to a claim under Louisiana Civil Code Article 2315. The second is that appellant failed to establish that Louisiana Workforce Commission's legitimate non-discriminatory reason for a selection of Ms. Myra Lott Patton was a pretext for racial discrimination. Allegations of unlawful discrimination under Title VII should not give rise to claims under 2315 for two reasons, one being to do so would undermine the work force. I think that that's absolutely clear. Maybe you would do better for us if you go to the Title VII issue. Yes, Your Honor. Louisiana Workforce Commission acknowledges that the appellant can meet her initial burden of establishing a prima facie case. She's an African-American female belonging to a protected class. She was one of four applicants who was interviewed for the position, meaning that she was qualified. She was not selected, and the person qualified was not a protected class. However, we do not concede that the appellant was clearly better qualified for the position, that our selection of Ms. Myra Lott Patton was motivated by race, nor was there any intentional discrimination against the appellant. Louisiana Workforce Commission selected Myra Lott Patton because she was the most competitive candidate for the position. She has a master's degree, a proven track record of success, having achieved the highest level of rehabilitation counselor, that being master counselor, in just three years of employment. She had two years of supervisory experience within the agency. She had an excellent interview. She met her closure goal six of eight years, and she did have the designation of certified rehabilitation counselor, just as the regional manager did and the two current district supervisors. I'm sorry. Appellant has the burden of showing that the profit reason is merely a pretext for racial discrimination. Appellant attempts to meet this burden by alleging that she's clearly better qualified, which is a high bar to meet. Let me stop you there. The CRC designation you said was the same that was held by the district manager and who else? They were two current district managers already in a position there. And the regional manager? Yes, Your Honor. All right. So those were people who were similarly situated to the job that these persons were applying for. Two were similarly situated, and one would be her supervisor. All right. So how many such persons within the region would there have been? In other words, the position at issue was one position, and there were how many others? Two. There were two. Yes, Your Honor. So with hiring the person who was hired, both people in those positions would have the CRC credentials? Yes, Your Honor. Both individuals have the CRC credential upon taking their position. All right. So the regional director or manager, was that the appointing authority? No, sir. That was Mr. Chuck Vaughn. So he would be the supervisor of these other two people? Yes, Your Honor. So he had the CRC? Yes, Your Honor. All right. So in the application path, the job posting, et cetera, et cetera, was the CRC a criteria that's listed in the posting, or is this the kind of thing where, you know, some applicants say commensurate other experience or commensurate similar credentials, et cetera, et cetera? In other words, you don't fail to qualify because you don't have it, although some things may say preferred. So two questions. One, did the posting say CRC was preferred, if not required, or any such language? No, Your Honor. The posting only requires a baccalaureate degree, three years of experience, two of that as a rehabilitation counselor. That is it. All right. So you've already said the plaintiff here in the four definitely qualified, you know, based on her own notwithstanding not having it. So she's in the competitive pool, right? That's right. All right. So is the CRC designation, was that the defining sort of benchmark? It was a ‑‑ I wouldn't say the defining because it was that in addition to her other qualifications, but it was something that set her apart from the other applicants, as the other four did not. Three of the applicants had masters, one did not. So the CRC designation set her apart from the three other applicants that were interviewed, and it also positioned her to be equal to those that she would be working with. Okay. Thank you. If Ms. Roberson had had that certificate, would we be obliged to reverse, or is it just so deferential that ‑‑ I don't think you would be obliged to reverse. I think you would ‑‑ I don't think ‑‑ I guess I'm asking is there anything else, and you're saying there is. She did well in the interview with a little check mark, scored her higher on a bunch of those categories. Yes. If I can compare it kind of to the tick marks that the appellant gave, he speaks of her master counselor position. Our applicant that we selected, Ms. Myerlot Patton, had begun employment in 2008, and by 2011, three years later, she had reached the highest level of a rehabilitation counselor, that being a master counselor. And so the seniority discussion that he has, her 24 years, 12 with the state, 12 with LRS, it took her 24 years to get what Ms. Myerlot Patton got in three years. And so I think in addition to that, her interview as well as her master's degree, I think those things set her apart from the other applicants, particularly Ms. Roberson King. Hypothetically, let's say you flipped it. Okay. And you'd given it to Ms. Roberson, and Ms. Patton were here in front of us. I don't think Ms. Patton would have the Title VII protections. I know, but you see what I'm getting at. In other words, what case could you point to? Was it any of the three you mentioned where a court actually says an example of clearly more qualified pretext can be inferred? How egregiously differential is it? I think if we're going to be in the hypothetical, I think it would have to be in the languages we refer to, but it's been overturned by the Supreme Court, where it has to jump off the pages and say this person is obviously more qualified. When you have applicants that are similarly situated or where it could be a close call, I don't think you can make that determination. Just the military background you acknowledge, that's wonderful. It is wonderful, but we also have supervisory experience within the agency, which is part of the job detail that she would be doing. Within the four applicants, was the appellant the only person in the protected class? Said differently, was she the only person of color? Yes, Your Honor. All right. In an effort to justify appellant's belief that she's clearly the most qualified candidate. I take it none of the other people in the other positions, including Ms. DeVon, are persons of color. That's not true, Your Honor. One of the district supervisors is an African-American female. Okay. I shouldn't have said that. I'm sorry. I should have asked it rather than say it. I apologize. No, Your Honor. And just for clarification, the appointed authority is an African-American male. The supervisor over Mr. Vaughn is an African-American male. Mr. Vaughn is not an African-American male. So there are some other individuals who we would consider being protected class that were part of the decision-making or the oversight as it relates to this claim. Is it relevant that Mr. Moore pumped the brakes a little? No. What appellant failed to tell you is that there are four grievances. So from the moment that this election was made and announced, Ms. Robertson King wrote four grievances to the appointed authority expressing her discontent for not being selected. And even in one of those allegations, she talks about how she's unhappy about the selection, but she also talks about unethical work assignments, segregation in the office. So she makes a number of complaints that give rise to the investigation that comes. Even though the appointed authority attempted to stop the process to investigate it more thoroughly, he could not. However, he did continue with the process of investigation, and he did have a finding that there was no basis to any of her allegations. So even though he couldn't give her the job she wanted or he couldn't stop the brakes, pump the brakes on the situation, he did follow through on the investigation. As I was stating, appellant attempts to create her own criteria for this position, and she relies on those particular areas that we've discussed. In an effort to justify her belief that she's clearly the most qualified candidate, appellant created her own qualifications, supervisory experience, a history of success, and leadership skills. She relies on her years of experience, which this court has already said that years of experience do not equate to being the most qualified or the superior candidate. Self-created qualifications do not show the self-created qualifications that Ms. Robertson-King has brought forth does not show that she's the most clearly qualified candidate for the position. At best, she shows that she's similarly situated to the applicant that we selected. This court has determined that better education, work experience, and seniority does not lead to being a clearly better qualified candidate, nor does similar or equivalent qualifications give rise to a fact question as to pretext. We ask that this court affirm the decision of the district court and that there was no legitimate non-discriminatory reason for pretext. The granting of the motion of summary judgment was proper and it should be affirmed. Are there any other questions? All right. Thank you, ma'am. Thank you. All right. Back to you, Ms. Wilson. You have a vote, if you'd like. Caldwell v. KHOUTV. This is a new best case. Yes, Your Honor. You were involved in that one. You were on the panel. It's in your brief. I don't think it's in my brief. You'd better give us the cite then. That's 850 F3rd 237, March 6, 2017. I just, you know, I mean, I used to be a lawyer, and so you've got to come in the best case, and that's fine. You've done your best. Is it always stark to me that a best case can be a case not in briefs? That's just inadvertent, but you found it right there? Why would you put it in your briefs? This is what happens. I find my best cases, and then I find out who's on my panel. Then I go find out the cases that you've been sitting on. Then I see that you've sat on this case, and I'm like, this is golden. So that's why I just raised it to you and give you the cite. Your Honor, she just mentioned an investigation. Let's just give you a point for future reference. Number one, only a fraction of our cases go to oral argument, and a lot of cases like this wouldn't be argued. Number two, the cases most principally are decided on the briefs, and so it is, to me, axiomatic. If you've got a best case, irrespective of what panel may get your case, put it in the brief. Unless it comes off the print and press during the process in the 28J, because we're going to do our research, but we rely on counsel to do the work. So we're looking for a case. That's why we grant oral argument, to have the argument. So it's not the best help if we don't get the best case. I see what color the light is. It's not the best help if we get your best case. I mean, you could still win on it if it really is, but it's really helpful if you dig that case out to make sure we have it so we don't miss it. That's just not a criticism. It's just sometimes lawyers expect they're going to get oral argument. I'm here at oral argument, and the judge asked me for my best cases, and I had one where he was on the panel. There was a mention made of an investigation. There is no investigation in the record. None. There's no record of any investigation. There's no statement of anyone who was involved in any investigation. So you can just disregard that or regard it as inadmissible hearsay. You will not find a record of an investigation, no report of an investigation in the record of this case. You didn't argue the point about 2315 and all of that. I'll do that right now. Nope. You got a red light now. So I'm not asking you if you conceded it. I'm just saying do you prefer to rest on the brief on that point? Do I have a choice? No. Well, you do have a choice. You can say I abandon that argument. I do not abandon the argument. Okay. I mean, that would be the choice. You can say I abandon it. I don't still subscribe to that view. I'm not trying to get you to give up anything. You picked the order. I just wanted to have it said that if you rely on the brief on that point, then, you know, we read the brief and we move forward. Rely on the briefs. All right. You good? Thank you. All right. Thank you, sir. Thank both counsel for the briefing and argument in the case. This completes the cases that are set for oral argument this morning.